**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GENIUS SPORTS SS, LLC )<br><br>Plaintiff, )<br><br>v. )<br><br>SPORTSCASTR INC. )<br>(d/b/a PANDA INTERACTIVE) )<br><br>Defendant. | Case No. 1:26-cv-3900<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiffs Genius Sports SS, LLC ("Genius"), by and through their attorneys, for their Complaint against Defendant SportsCastr Inc. (d/b/a PANDA Interactive) ("PANDA" or "Defendant"), hereby allege as follows.

**NATURE OF THE ACTION**

1.      This is an action arising under the patent laws of the United States, 35 U.S.C. § 271, *et seq.*, for infringement of United States Patent Nos. 10,769,446 ("the '446 patent"), 11,120,271 ("the '271 patent"), and 11,373,405 ("the '405 patent") (collectively, "the patents-in-suit").

2.      Defendant imports, offers for sale, sells, distributes, and/or uses in the United States the infringing product ("Accused Product"), and encourages others to use the Accused Product in an infringing manner. The Accused Product includes, at least, PANDA Studio, including PANDA Studio software alone and/or in combination with hardware (e.g., personal computers, mobile phones, tablets, or servers) that executes the PANDA Studio software.

**PARTIES**

1.      Genius is a Delaware corporation with places of business at 512 West 22ⁿᵈ Street, New York, NY 10011 and 312 East 1ˢᵗ St, Los Angeles, CA 90012.

2.    On information and belief, Defendant is a Delaware corporation with a place of business in New York, New York, including at least:  100 Barclay St., 27B, New York, NY 10007; 1050 5th Ave New York, NY 10028-0110; 595 Madison Avenue, New York, NY; and, 7 Penn Plaza, Suite 1400, New York, NY 10001.  As explained below, these locations are places of business of Defendant, and Defendant has ratified them as such through the actions described herein.

## JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4.    Defendant is subject to personal jurisdiction in this District because Defendant has substantial, continuous, and systematic contacts with this District. Moreover, Defendant has purposefully availed itself of the benefits and protections of this District by directing its business activities in relation to at least the Accused Product toward this District. Further, on information and belief, Defendant regularly transacts business in this District by, among other things, making, using, selling, or offering to sell products to customers located in this District, including the Accused Product.

5.    For example, on information and belief, Defendant's senior leadership, including Andrew Schupak (Defendant's CSO and co-founder) and Donald Schupak (Defendant's Chairman), reside in New York and conduct core business operations for Defendant from New York, including from their homes or locations under their control located in New York City. *See* https://pandainteractive.com/aboutus (noting Andrew and Donald Schupak's executive roles) (last visited May 6, 2026).

6.    On information and belief, CSO Andrew Schupak conducts business on behalf of Defendant from New York, including sales outreaches, solicitations, pitches, and other forms of

offers for sale and marketing from his home address, 100 Barclay St., 27B, New York, NY 10007. *See* https://esos.nv.gov/EntitySearch/OnlineEntitySearch (business entity search for SportsCastr, Inc.) (Defendant's business registration listing Andrew Schupak as located at 100 Barclay St., 27B, New York, NY 10007) (last visited May 6, 2026); https://www.linkedin.com/in/andrew-schupak-0165188/ (LinkedIn location showing New York) (last visited April 28, 2026).

7.      As to Defendant's Chairman, Donald Schupak, he is an attorney licensed in New York and, on information and belief, performs corporate and legal functions for Defendant from New York as its Chairman. *See*  https://iapps.courts.state.ny.us/attorneyservices/details?4 (New York Bar information for Donald Schupak listing 1050 5th Ave New York, NY 10028-0110) (last visited May 5, 2026); https://www.linkedin.com/in/donald-schupak-582995b/ (LinkedIn location showing New York) (last visited May 5, 2026).

8.      As another example, Defendant's CEO, Kevin April, currently holds himself out to the public on X as living in New York:



Kevin April X Account (showing location as New York).

9.      On information and belief, these individuals collectively direct, control, and coordinate Defendant's business activities from this District, including product strategy, customer engagement, and corporate decision-making, including those related to the Accused Product.

10. Defendant has also repeatedly identified New York as a base of operations. For example, the SportsCastr X account lists its location as "New York, NY":



@SportsCastrLive X Account (showing location as New York).

11. Defendant has also purposefully availed itself of this District by designating New York as the governing law and forum for disputes in its publicly available terms of service for its products and services, including for the Accused Product. *See* https://studiopanda.live/terms ("This Agreement is made under and will be governed by and construed in accordance with the laws of the State of New York … [Y]ou may assert your claims in small claims court in New York, NY, if your claims qualify…  If for any reason a claim proceeds in court rather than in arbitration, the dispute will be exclusively brought in state or federal court in New York, NY.").

12. Defendant has also been described in public reporting as a New York City–based company and as having launched out of New York. *See* https://www.geekwire.com/2017/former-nba-commissioner-syracuse-hoops-head-coach-invest-sportscastr-live-streaming-platform/ ("SportsCastr.live launched today out of New York City and offers a live video streaming platform

4

that lets anyone become a color commentator.") (last visited May 5, 2026); https://tracxn.com/d/companies/sportscastr/__kMbdj1tJ2dig37hOVOhRFCxmIvvLobt7gnxY9P8 pWgE#about-the-company (SportsCastr company profile, noting "SportsCastr is a seed company based in New York City (United States), founded in 2017 by Kevin April.") (last visited May 5, 2026); https://www.nytimes.com/athletic/1505178/2020/01/03/he-opened-every-door-david-sterns-second-act-as-a-gruff-lovable-sports-tech-startup-investor-and-mentor/ ("Kevin April, CEO of New York City-based SportsCastr that's a streaming app that allows anyone to act as a sportscaster during a live game or event, said via an emailed statement that Stern was not only an investor but also a mentor and friend.") (last visited May 5, 2026).

13. Moreover, emails Defendant has submitted to the Patent Trial and Appeal Board ("PTAB") use a New York City address for its operations: "595 Madison Avenue, New York, NY":

On Tue, May 8, 2018 at 4:24 PM, Kevin April <kevin@sportscastr.com> wrote:

Thanks for reaching out, Luke. It would be great to chat about what we're doing and explore ways we could help each other.

Since you are in a different time zone, if you want to suggest a day/time-frame that works best for you we'll try our best to accomodate. Thursday/Friday is pretty open right now.

Best,
Kevin

--
Kevin April, CEO - SportsCastr
595 Madison Avenue - New York, NY - 10022
Cell: (646) 334-4321 Office: (212) 582-4210 Fax: (212) 262-1031

*See, e.g.*, https://ptacts.uspto.gov/ptacts/public-informations/petitions/1557032/download-documents?artifactId=k6mzR-xJsBuBdk85o3cyc_hdkR5aCb0uJvcQTA6cIu6PuDtUoVYVQHo (public document filed during *inter partes* review showing a New York City address) (last visited

May 5, 2026). No other address is listed on Defendant's signature block in that correspondence. Further, 595 Madison Avenue and another New York address (7 Penn Plaza, Suite 1400, New York, NY 10001), have been associated with Andrew Schupak in filings with the Financial Industry Regulatory Authority ("FINRA"). *See* https://brokercheck.finra.org/individual/summary/2404355 (last visited May 5, 2026). The face of multiple patents belonging to Defendant also identifies the assignee, Defendant's predecessor, as being located in New York, NY, as well as its CEO Kevin April.

| | | |
|---|---|---|
| (72) | Inventors: | **Kevin April**, New York, NY (US); **Peter Azuolas**, Philadelphia, PA (US); **Philip Nicholas Schupak**, Brooklyn, NY (US); **Brian Silston**, New York, NY (US) |
| (73) | Assignee: | **SportsCastr.LIVE**, New York, NY (US) |

*See, e.g.,* U.S. Patent Nos. 10,425,697, 10,805,687, and 11,039,218.

14. On information and belief, Defendant has also committed acts of infringement of one or more claims of each of the patents-in-suit in this District by making, using, offering for sale, selling, and providing access to the Accused Product and associated services to users located in this District. On information and belief, Defendant's business activities giving rise to those acts— including product development, product strategy, corporate direction, and related financial, sales, and marketing decision-making—are carried out from this District by Defendant's New York-based personnel from their homes or locations under their control.

15. Venue in this District is proper under 28 U.S.C. §§ 1391(b) and (c) and 1400(b) because Defendant has committed acts of infringement and has a regular and established place of business in this District as set forth above.

16.     As discussed above, on information and belief, Defendant maintains regular and established places of business in this District through its New York-based senior executives—including Andrew Schupak, Donald Schupak, and Kevin April—from which it conducts core business operations. These individuals reside in and conduct business on behalf of Defendant in these locations in this District, including but not limited to the residences and real estate owned or controlled by Andrew Schupak and Donald Schupak, such as: 100 Barclay St., 27B, New York, NY 10007; 1050 5th Ave New York, NY 10028-0110; 595 Madison Avenue, New York, NY; and, 7 Penn Plaza, Suite 1400, New York, NY 10001. Further, on information and belief, Defendant has ratified those places in this District as its own. Defendant has also held out New York as a place of business through its public statements and in official filings with the PTAB. These New York City locations constitute Defendant's regular and established place of business in this District, and Defendant has ratified them as such.

17.     Defendant's acts of infringement in this District include making, using, offering for sale, selling, and providing access to the Accused Product and associated services to its own personnel as well as to customers and users located in this District.

18.     For example, upon information and belief, Defendant offers PANDA Studio for sale in New York. Defendant identifies the World Putting League ("WPL") as a PANDA Studio client on its website, and WPL lists its location on X as New York. https://studiopanda.live/clients (last visited May 5, 2026); https://x.com/worldputtleague (last visited May 5, 2026).

19.     Further, in the email Defendant submitted to the PTAB described above, Defendant's CEO Kevin April is soliciting business about a potential partnership related to its SportsCastr     product     from     New     York.     https://ptacts.uspto.gov/ptacts/public-

informations/petitions/1557032/download-documents?artifactId=k6mzR-

xJsBuBdk85o3cyc_hdkR5aCb0uJvcQTA6cIu6PuDtUoVYVQHo (last visited May 5, 2026).

20.     Moreover, on information and belief, Defendant has used the Accused Product in this District in an infringing manner, including through product demonstrations, pitches, and product testing.

## FACTUAL BACKGROUND

21.     Genius is a subsidiary of Genius Sports Ltd., a global leader in sports technology that has consistently distinguished itself through deep investment in innovation, data science, and advanced media solutions. The company was founded in 2001 under the name BetGenius and began as a software company specializing in aggregating sports betting data. It then evolved into providing outsourced oddsmaking solutions to sportsbooks. Over the next decade, Genius expanded to become a software provider to sports and media technology companies and, in 2015, Genius Sports Group was formed. Since 2015, Genius has developed cutting-edge data analytics, live data capture, immersive media, fan engagement tools, and brand activation technologies. Today, Genius partners with some of the world's leading sports leagues, federations, teams, broadcasters, and sportsbooks and is widely recognized for transforming how sports data is collected, analyzed, and used globally.

22.     As part of its innovation-driven strategy, Genius Sports Ltd. acquired Second Spectrum in 2021, a company widely regarded as one of the most sophisticated and forward-thinking technology innovators in sports analytics. Second Spectrum was founded in 2013 by Rajiv Maheswaran and Yu-Han Chang, both computer science professors at the University of Southern California, alongside data expert Jeff Su. From its inception, Second Spectrum focused on applying advanced computer vision, machine learning, and artificial intelligence to sports, developing proprietary systems capable of analyzing video at the pixel level to track player

movements, ball trajectories, and spatial dynamics in real time. Its technology did not merely collect data—it transformed raw data and video into structured, actionable intelligence, unlocking entirely new ways to understand and visualize sports.

23. Second Spectrum quickly established itself through partnerships with sports organizations. Notably, it was selected as the Official Optical Tracking Provider for the National Basketball Association beginning with the 2017–2018 season, deploying its advanced player-tracking system across all NBA arenas. https://pr.nba.com/nba-announces-multiyear-partnership-sportradar-second-spectrum/ (last visited May 5, 2026). This system captured highly granular spatial and motion data for every player and the ball on every possession, enabling the generation of sophisticated statistics and insights. Beyond league-wide deployments, Second Spectrum also collaborated directly with individual teams to develop customized analytics tools, performance models, and visualization products tailored to coaching, scouting, and broadcast applications. *Id*.; *see, e.g.* https://www.geniussports.com/newsroom/genius-sports-transforms-trail-blazer-broadcasts-with-second-spectrum-player-tracking-technology/ (last visited May 5, 2026). Its technology has likewise been adopted by other global leagues, including the English Premier League and Major League Soccer, further cementing its reputation as a best-in-class provider of tracking and analytics solutions. https://www.geniussports.com/newsroom/genius-sports-acquires-second-spectrum-the-official-data-tracking-and-analytics-provider-of-the-epl-nba-and-mls/ (last visited May 5, 2026).

24. Recognizing the transformative potential of this technology, Genius acquired Second Spectrum to integrate these capabilities into its own best-in-class platform, enabling it to offer "new levels of rich data-driven insights to its partners around the world, benefiting leagues, federations, teams, fans, coaches, sportsbooks, broadcasters and sponsors."

https://investors.geniussports.com/news/news-details/2021/Genius-Sports-Acquires-Second-Spectrum-the-Official-Data-Tracking-and-Analytics-Provider-of-the-EPL-NBA-and-MLS/default.aspx (last visited May 5, 2026).

25.     Following the acquisition, Genius seamlessly integrated Second Spectrum's groundbreaking technology into its own ecosystem, creating a powerful synergy between Genius' global distribution platform and Second Spectrum's technology. This integration further enabled Genius to deliver immersive, interactive fan experiences. For example, in March 2023, the NBA expanded its partnership with Genius and Second Spectrum, naming Second Spectrum its NBA League Pass Augmentation and Official NBA Team Basketball Analytics Provider. https://pr.nba.com/nba-genius-sports-second-spectrum-expanded-partnership/ (last visited May 5, 2026). Through this collaboration, Second Spectrum's technology powers real-time augmentation of live broadcasts—overlaying dynamic graphics, contextual insights, and advanced statistics directly onto video streams. *Id*. These enhancements allow fans to engage with games in new ways while providing teams and broadcasters with deeper analytical tools.

26.     In 2024, Genius further advanced its innovation pipeline with the launch of GeniusIQ, a sophisticated real-time data and artificial intelligence platform built on Second Spectrum's underlying technology. GeniusIQ leverages advanced machine learning models to ingest and analyze massive volumes of data—including player tracking data, event data, and contextual game information—in real time. The platform "detect[s] patterns, interpret[s] game flow, and highlight[s] key moments" as they occur, transforming this intelligence into visually compelling augmentations that are rendered directly onto live or recorded video streams.

10



https://www.geniussports.com/engage/augmentation/ (last visited May 5, 2026); https://www.geniussports.com/geniusiq/ (last visited May 5, 2026). For example, GeniusIQ enables teams, leagues, and brands to generate and distribute augmented highlights across social media and other digital channels, extending fan engagement beyond the live event, including integrated stats like shot speed.



https://cms.geniussports.com/wp-content/uploads/2024/07/7-Ways-AI-is-Enabling-Sports-Teams-to-Drive-Fan-Engagement-1.pdf (last visited May 5, 2026). This helps teams engage with their fan base, even after the conclusion of the game. In addition, the same technology can be deployed in-stadium to enhance replays and live presentations. *Id*. This groundbreaking technology, which was built and developed using Second Spectrum's revolutionary augmentation and visualization technology, optimizes fan and viewer engagement and is driving an entirely new way to experience sports. The novel capabilities made possible through Genius' acquisition of Second Spectrum continue to set the industry standard for sports technology innovation.

27.    Second Spectrum expended significant resources developing this revolutionary technology and refining and integrating it into its modern product offerings. Recognizing the immense value in this technology, Second Spectrum protected its ground-breaking innovations through a number of means, including by obtaining the patents-in-suit.

28.    Defendant, on the other hand, has attempted to ride on Genius' and Second Spectrum's innovative coattails through its infringing Accused Product. On information and belief, the Accused Product did not launch until 2020—nearly a decade after Second Spectrum was founded. *See* https://en.wikipedia.org/wiki/Kevin_April (last visited May 5, 2026). As discussed further below, Defendant has marketed the Accused Product as offering the same or equivalent features as those covered by the patents-in-suit. Further, on information and belief, Defendant has been monitoring Genius and its innovations since at least 2021. *See* U.S. Patent No. 11,039,218 at 3.

29.    Genius brings this lawsuit to put a stop to Defendant's willful infringement of Genius' patent rights.

**U.S. PATENT NO. 10,769,446**

30.    The U.S. Patent and Trademark Office duly issued the '446 patent, entitled "Methods and systems of combining video content with one or more augmentations," on September 8, 2020. The named inventors are Yu-Han Chang, Rajiv Tharmeswaran Maheswaran, Jeffrey Wayne Su, Emil Dotchevski, and Jason Kent Simon. A true and correct copy of the '446 patent is attached as Exhibit 1.

31.    Genius Sports SS, LLC is the owner of the '446 patent and has the full right to enforce, license, and seek past damages for the '446 patent.

**U.S. PATENT NO. 11,120,271**

32.    The U.S. Patent and Trademark Office duly issued the '271 patent, entitled "Data processing systems and methods for enhanced augmentation of interactive video content," on September 14, 2021. The named inventors are Yu-Han Chang, Tracey Chui Ping Ho, and Rajiv Tharmeswaran Maheswaran. A true and correct copy of the '271 patent is attached as Exhibit 2.

33.    Genius Sports SS, LLC. is the owner of the '271 patent and has the full right to enforce, license, and seek past damages for the '271 patent.

**U.S. PATENT NO. 11,373,405**

34.    The U.S. Patent and Trademark Office duly issued the '405 patent, entitled "Methods and systems of combining video content with one or more augmentations to produce augmented video," on June 28, 2022.  The named inventors are Yu-Han Chang, Rajiv Tharmeswaran Maheswaran, Jeffrey Wayne Su, Emil Dotchevski, and Jason Kent Simon. A true and correct copy of the '405 patent is attached as Exhibit 3.

35.    Genius Sports SS, LLC is the owner of the '405 patent and has the full right to enforce, license, and seek past damages for the '405 patent.

## COUNT I - INFRINGEMENT OF U.S. PATENT NO. 10,769,446

36.     Genius incorporates the foregoing Paragraphs 1–35 by reference as though fully set forth herein.

37.     Defendant has been making, using, selling, or offering to sell within the United States and/or importing into the United States the Accused Product and is infringing, directly and/or indirectly, with willfulness or willful blindness, literally and/or under the doctrine of equivalents, at least claim 8 of the '446 patent under 35 U.S.C. § 271. Defendant's infringing product includes the PANDA Studio software (e.g., as embedded within a webpage or mobile application) alone and/or in combination with client devices (e.g., personal computers, mobile phones, or tablets) that execute the PANDA Studio software.

38.     Exhibit 4 attached hereto compares Defendant's PANDA Studio to claim 8 of the '446 patent.

39.     In addition to its direct infringement, Defendant has actively induced others to infringe claims of the '446 patent, including claim 8, in violation of 35 U.S.C. § 271(b), and Defendant continues to infringe even today.

40.     Defendant has been encouraging and is continuing to encourage other persons (e.g., its customers and end users) to directly infringe the '446 patent, such as by making, advertising, selling, offering to sell, supporting, distributing, and using infringing features in Defendant's Accused Product, including PANDA Studio.

41.      Defendant advertises and promotes PANDA Studio, provides customer support, and offers instruction designed to encourage its customers to use PANDA Studio in an infringing manner with knowledge (or willful blindness) of that infringement. Defendant also provides its customers and the public with materials, including demonstrations, trainings, guides, videos, and

websites that depict and describe the infringing features of PANDA Studio with knowledge (or willful blindness) of that infringement.

42.     In addition to its direct infringement, Defendant has contributed to the infringement of claims of the '446 patent, including claim 8, in violation of 35 U.S.C. § 271(c). The Accused Product is specifically designed to be used in an infringing way with Defendant's knowledge (or willful blindness) of that infringement and has no substantial uses other than ones that infringe one or more claims of the '446 patent. The infringing features identified in the claim chart attached hereto constitute a material part of the invention of one or more claims of the '446 patent and are not staple articles or commodities of commerce suitable for substantial non-infringing use.

43.     On information and belief, Defendant knew of Genius, its product offerings, and its technology since at least 2021. Defendant has been aware of the '446 patent at least as of the filing of this Complaint.

44.     Despite knowing of the '446 patent or being willfully blind to the '446 patent, Defendant has continued to make, use, sell, offer to sell, and/or import infringing products.

45.     Defendant's continued infringement of the '446 patent has damaged and will continue to damage Genius. Unless and until enjoined by this Court, Defendant will continue to directly infringe as well as induce and contribute to infringement of the '446 patent. Defendant's infringing acts are causing and will continue to cause Genius irreparable harm, for which there is no adequate remedy at law. Under 35 U.S.C. § 283, Genius is entitled to a permanent injunction against further infringement.

46.     This case is exceptional, entitling Genius to an award of attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

47.    Due to Defendant's willful and deliberate infringement, the Court should award Genius up to treble damages under 35 U.S.C. § 284 for infringement of the '446 patent.

## COUNT II - INFRINGEMENT OF U.S. PATENT NO. 11,120,271

48.    Genius incorporates the foregoing Paragraphs 1–47 by reference as though fully set forth herein.

49.    Defendant has been making, using, selling, or offering to sell within the United States and/or importing into the United States the Accused Product and is infringing, directly and/or indirectly, with willfulness or willful blindness, either literally and/or under the doctrine of equivalents, at least claim 8 of the '271 patent under 35 U.S.C. § 271. Defendant's infringing product includes the PANDA Studio as implemented on one or more servers.

50.    Exhibit 5 attached hereto compares Defendant's PANDA Studio to claim 8 of the '271 patent.

51.    In addition to its direct infringement, Defendant has actively induced others to infringe claims of the '271 patent, including claim 8, in violation of 35 U.S.C. § 271(b), and Defendant continues to infringe even today.

52.    Defendant has been encouraging and is continuing to encourage other persons (e.g., its customers and end users) to directly infringe the '271 patent, such as by making, advertising, selling, offering to sell, supporting, distributing, and using infringing features in Defendant's Accused Product, including PANDA Studio.

53.    Defendant advertises and promotes PANDA Studio, provides customer support, and offers instruction designed to encourage its customers to use PANDA Studio in an infringing manner with knowledge (or willful blindness) of that infringement. Defendant also provides its customers and the public with materials, including demonstrations, trainings, guides, videos, and

16

websites that depict and describe the infringing features of PANDA Studio with knowledge (or willful blindness) of that infringement.

54.     In addition to its direct infringement, Defendant has contributed to the infringement of claims of the '271 patent, including claim 8, in violation of 35 U.S.C. § 271(c). The Accused Product is specifically designed to be used in an infringing way with Defendant's knowledge (or willful blindness) of that infringement and has no substantial uses other than ones that infringe one or more claims of the '271 patent. The infringing features identified in the claim chart attached hereto constitute a material part of the invention of one or more claims of the '271 patent and are not staple articles or commodities of commerce suitable for substantial non-infringing use.

55.     On information and belief, Defendant knew of Genius, its product offerings, and its technology since at least 2021. Defendant has been aware of the '271 patent at least as of the filing of this Complaint.

56.     Despite knowing of the '271 patent or being willfully blind to the '271 patent, Defendant has continued to make, use, sell, offer to sell, and/or import infringing products.

57.     Defendant's continued infringement of the '271 patent has damaged and will continue to damage Genius. Unless and until enjoined by this Court, Defendant will continue to directly infringe as well as induce and contribute to infringement of the '271 patent. Defendant's infringing acts are causing and will continue to cause Genius irreparable harm, for which there is no adequate remedy at law. Under 35 U.S.C. § 283, Genius is entitled to a permanent injunction against further infringement.

58.     This case is exceptional, entitling Genius to an award of attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

17

59.    Due to Defendant's willful and deliberate infringement, the Court should award Genius up to treble damages under 35 U.S.C. § 284 for infringement of the '271 patent.

### COUNT III – INFRINGEMENT OF U.S. PATENT NO. 11,373,405

60.    Genius incorporates the foregoing Paragraphs 1–59 by reference as though fully set forth herein.

61.    Defendant has been making, using, selling, or offering to sell within the United States and/or importing into the United States the Accused Product and is infringing, directly and/or indirectly, with willfulness or willful blindness, either literally and/or under the doctrine of equivalents, at least claim 1 of the '405 patent under 35 U.S.C. § 271. Defendant's infringing products include the PANDA Studio software (e.g., as embedded within a webpage or mobile application) alone and/or in combination with client devices (e.g., personal computers, mobile phones, or tablets) that execute the PANDA Studio software.

62.    Exhibit 6 attached hereto compares Defendant's PANDA Studio to claim 1 of the '405 patent.

63.    In addition to its direct infringement, Defendant has actively induced others to infringe claims of the '405 patent, including claim 1, in violation of 35 U.S.C. § 271(b), and Defendant continues to infringe even today.

64.    Defendant has been encouraging and is continuing to encourage other persons (e.g., its customers and end users) to directly infringe the '405 patent, such as by making, advertising, selling, offering to sell, supporting, distributing, and using infringing features in Defendant's Accused Product, including PANDA Studio.

65.    Defendant advertises and promotes PANDA Studio, provides customer support, and offers instruction designed to encourage its customers to use PANDA Studio in an infringing manner with knowledge (or willful blindness) of that infringement. Defendant also provides its

customers and the public with materials, including demonstrations, trainings, guides, videos, and websites that depict and describe the infringing features of PANDA Studio with knowledge (or willful blindness) of that infringement.

66.     In addition to its direct infringement, Defendant has contributed to the infringement of claims of the '405 patent, including claim 1, in violation of 35 U.S.C. § 271(c). The Accused Product is specifically designed to be used in an infringing way with Defendant's knowledge (or willful blindness) of that infringement and has no substantial uses other than ones that infringe one or more claims of the '405 patent. The infringing features identified in the claim chart attached hereto constitute a material part of the invention of one or more claims of the '405 patent and are not staple articles or commodities of commerce suitable for substantial non-infringing use.

67.     On information and belief, Defendant knew of Genius, its product offerings, and its technology since at least 2021. Defendant has been aware of the '405 patent at least as of the filing of this Complaint.

68.     Despite knowing of the '405 patent or being willfully blind to the '405 patent, Defendant has continued to make, use, sell, offer to sell, and/or import infringing products.

69.     Defendant's continued infringement of the '405 patent has damaged and will continue to damage Genius. Unless and until enjoined by this Court, Defendant will continue to directly infringe as well as induce and contribute to infringement of the '405 patent. Defendant's infringing acts are causing and will continue to cause at least Genius irreparable harm, for which there is no adequate remedy at law. Under 35 U.S.C. § 283, Genius is entitled to a permanent injunction against further infringement.

70.     This case is exceptional, entitling Genius to an award of attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

19

71.    Due to Defendant's willful and deliberate infringement, the Court should award Genius up to treble damages under 35 U.S.C. § 284 for infringement of the '405 patent.

## PRAYER FOR RELIEF

WHEREFORE, Genius prays for relief and judgment against Defendant as follows:

A.  That Defendant has infringed one or more claims of the '446 patent, '271 patent, and '405 patent;

B.  An award to Genius of damages under 35 U.S.C. § 284 for the infringement of the '446 patent, '271 patent, and '405 patent by Defendant, together with pre-judgment and post-judgment interest and costs;

C.  An award to Genius of treble damages under 35 U.S.C. § 284 for the willful infringement of the '446 patent, '271 patent, and '405 patent by Defendant;

D.  A permanent injunction of Defendant's infringing acts;

E.  A finding that this case is exceptional and awarding to Genius its reasonable attorney fees under 35 U.S.C. § 285;

F.  Judgment against Defendant on all counts of this Complaint; and

G.  Such other relief for Genius that the Court sees as just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Genius demands trial by jury in this action of all issues so triable.

Dated: May 11, 2026

Respectfully submitted,

/s/ *Jeanne M. Heffernan*
Jeanne M. Heffernan
New York Bar #4104055
James John Lomeo (*pro hac vice*
forthcoming)
KIRKLAND & ELLIS LLP
401 West 4th Street
Austin, TX 78701
(512) 678-9100
jheffernan@kirkland.com
james.lomeo@kirkland.com

Nikhil Rama Krishnan (*pro hac vice*
forthcoming)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
nikhil.krishnan@kirkland.com

*Attorneys for Plaintiff Genius Sports SS, LLC.*

21